

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY BRADLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 25-cv-2186-AGS-MMP<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR EXPEDITED SITE INSPECTION**<br><br>[ECF No. 15] |

Pending before the Court is Plaintiffs' Motion for Expedited Discovery in which Plaintiffs seek leave to conduct a site inspection under Federal Rule of Civil Procedure ("Rule") 34 of two homeless camps in the Safe Sleeping Program that are the subject of this lawsuit. ECF No. 15 at 3. Defendants filed an opposition, to which Plaintiffs replied. ECF Nos. 20, 23. The Court found the motion suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). ECF No. 14. For the reasons set forth below, the Court **GRANTS IN PART** the motion.

## I.    RELEVANT BACKGROUND

Plaintiffs are eight unhoused people with disabilities who reside at two homeless camps designated under Safe Sleeping Program operated by Defendants City of San Diego

1

("City") and its contractors, Defendants Dreams for Change and Downtown San Diego Partnership. ECF No. 15-1 at 3; First Amended Complaint ("FAC"), ECF No. 12 ¶ 1. The Safe Sleeping Program is a free, voluntary, and temporary campsite program where participants experiencing homelessness reside temporarily at one of the two camps located at Park Boulevard and Wieber Avenue ("O lot") and 26th Street and Pershing Drive ("B lot"). ECF No. 15 at 3; ECF No. 20 at 5. Plaintiffs allege residents stay for months or years at a time, are assigned individual tents, and may come and go as they please while living in the Safe Sleeping Program except when nighttime curfew is enforced. FAC ¶ 35. Plaintiffs, on behalf of themselves and putative class members,[1] contend the camps are unsafe, "uninhabitable, inhumane, and inaccessible" and assert disability discrimination and violation of their civil rights under California and federal law, seeking injunctive, declaratory, and compensatory relief. ECF No. 15-1 at 3; *see* FAC ¶ 36.

Plaintiffs filed this lawsuit in August 2025 and the operative FAC on January 12, 2026. ECF Nos. 1, 12. Defendants moved to dismiss the FAC, which Judge Schopler denied in substantial part. ECF Nos. 16, 17, 19, 36. Plaintiffs have until June 8, 2026 to file a Second Amended Complaint. ECF No. 36.

In the instant motion, Plaintiffs request leave of court to conduct site inspections of two homeless camps pursuant to Rule 34 prior to the parties' Rule 26(f) conference. ECF No. 15 at 3. Plaintiffs served a proposed Request for Inspection of both camps indicating:

> During said inspections, plaintiffs may inspect, measure, survey, photograph, test, or sample the property. Plaintiffs will make the utmost effort to ensure that the privacy rights of individuals living at either camp location are protected, and plaintiffs will avoid taking any photographs that show any resident without the resident's express permission.

---

[1] Plaintiffs seek to represent a putative class of "all present and/or formerly homeless persons who reside, formerly resided, will reside, and/or seek to reside in one or both of the Camp B and/or Camp O locations pursuant to the City of San Diego's 'Safe Sleeping Program.'" FAC ¶ 17.

25-cv-2186-AGS-MMP

ECF No. 15-2 at 6. Plaintiffs contend they need early discovery to develop evidence for a preliminary-injunction motion and to document current camp conditions within Defendants' exclusive control. ECF No. 15 at 3. In support of their request, Plaintiffs highlight two tent fire incidents at the O lot and detail how camp security denied their counsel access to residents, including those with mobility impairments. ECF No. 15-1 at 4. These facts, Plaintiffs contend, demonstrate the urgency of prompt inspection. *See id.* Plaintiffs further assert good cause exists because inspections will be permitted in the ordinary course, may streamline the case by narrowing or confirming issues, and the timing will not impose undue hardship on Defendants. *Id.;* ECF No. 15 at 3.

Defendants do not dispute the relevancy of the site inspections; nor do they assert any specific prejudice or hardship if the inspections occur now as opposed to later in the case. *See* ECF No. 20. Rather, Defendants oppose based on privacy concerns, the length and scope of the inspection, and lack of sufficient notice. *Id.* at 4–5. Defendants explain individuals participating in the Safe Sleep Program agree to the following condition:

> Under absolutely no circumstances may the participant(s) invite any visitors or any guests onto the site. Clients from B lot are not permitted to be at O lot or access O lot facilities under ANY circumstances, and vice versa. Similarly, clients from O lot cannot visit or be at B lot for any reason.

ECF No. 20 at 2.[2] According to Defendants, "[t]he hundreds of participants in Safe Sleeping are entitled to the benefit of the condition" and permitting a "site inspection violates this condition and their expectation of privacy." *Id.* at 3. Based on these privacy concerns, Defendants argue participants must have "sufficient, advanced notice of the date, time, and terms of the inspection" with a "reasonable opportunity to temporarily vacate the premises during the inspection" and further contend the inspection "should be very limited in scope." *Id.* In addition, Defendants assert participants are entitled to use all common

---

[2] Although Defendants did not include a declaration attesting to this condition, the Court has considered it as represented in Defendants' opposition.

25-cv-2186-AGS-MMP

areas and bathrooms at any time, and therefore there should be no photographs, video, or audio recordings taken during a site inspection. *Id.* at 4.

## II.    LEGAL STANDARD

Rule 34 authorizes a party to "serve on any other party a request within the scope of Rule 26(b) . . . to permit entry onto designated . . . property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2).

Rule 26(b)(1), in turn, defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

As both parties acknowledge, discovery is generally not permitted until after the parties have conferred pursuant to Rule 26(f), which has not yet occurred in this case. *See* Fed. R. Civ. P. 26(d)(1); ECF No. 15-1 at 3; ECF No. 20 at 4. The parties agree the Court should assess Plaintiffs' request for early discovery under the "good cause" standard discussed in *Semitool, Inc. v. Tokyo Electrom Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). ECF No. 15-1 at 3; ECF No. 20 at 4. "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276; *see also Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) (citation omitted). The Court weighs the following non-exclusive factors in considering whether early discovery is appropriate: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden

on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* at 1067 (citation omitted).

## III.    ANALYSIS

The relevance of the requested discovery—here, site inspections of the two Safe Sleeping camps—is not at issue. Thus, like in *Semitool*, "[t]he issue is whether there is good cause to provide immediate access to the requested discovery rather than postponing its ultimate production during the normal course of discovery." 208 F.R.D. at 276.

Upon weighing the above factors, and in consideration of the administration of justice, the Court concludes Plaintiffs have established their need for the expedited site inspection of the O lot outweighs the prejudice articulated by Defendants of providing immediate access. *See id.*

### A.    Whether to Seek an Early Injunction and the Purpose for Requesting the Expedited Discovery

Plaintiffs seek early discovery to determine whether to seek a preliminary injunction, which is relevant to both the first and third factors of the "good cause" analysis identified above. *See Am. LegalNet*, 673 F. Supp. 2d at 1066.

"Although a motion for a preliminary injunction is not pending, expedited discovery may be justified to allow a plaintiff to determine whether to seek an early injunction." *Intrepid Automation, Inc. v. 3D Sys. Corp.*, No. 24-cv-2262-AGS-DDL, 2025 WL 712652, at *2 (S.D. Cal. Mar. 5, 2025) (citation modified); *see also Dunsmore v. San Diego Cnty. Sheriff's Dep't*, No. 20-cv-406-AJB-DDL, 2023 WL 215724, at *2 (S.D. Cal. Jan. 17, 2023) ("Good cause is often established in cases where a preliminary injunction is or may be sought."); Advisory Committee Notes to the 1993 Amendments to Rule 26(d) (Discovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction."). "But expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." *Am. LegalNet*, 673 F. Supp. 2d at 1066. "Expedited discovery must be narrowly tailored to obtain information relevant to the determination of

25-cv-2186-AGS-MMP

whether an injunction should issue." *Intrepid Automation*, 2025 WL 712652, at *2 (citation modified).

Plaintiffs contend early site inspections are essential to "develop evidence in support of their claims for preliminary injunction" and "to document the current conditions of the camps which are under the exclusive management and control of the defendants." ECF No. 15 at 3. Plaintiffs further explain the "pressing need for a prompt inspection [is] due to the fire danger at the camps" including due to the close proximity of the tents. ECF No. 15-1 at 4. Plaintiffs provide a declaration from Plaintiff Abood, who witnessed another Safe Sleeping participant's tent catch fire in early 2025 while a resident in the O lot. ECF No. 15-3 ¶¶ 2–3. According to Plaintiff Abood, the fire originated when a participant was burning candles for warmth, which "is a common practice at the camp because the tents can get cold and there is no heating available." *Id*. ¶ 6. She further estimates the tents were positioned approximately two feet apart. *Id.* ¶ 5. According to Plaintiffs, this fire was not an isolated incident. Plaintiffs also reference counsel Ann Menasche's declaration regarding her interview with a putative class member, an O lot resident, about a tent fire in January 2026. ECF Nos. 15-3, 15-4. Although counsel attached the proposed declaration as an exhibit, she was unable to obtain the putative class member's signature prior to filing. ECF No. 15-4 ¶¶ 4–6. Attorney Menasche further attests camp security denied her access to the O lot to meet with participants after consulting with Defendant Downtown Partnerships. *Id.* ¶ 6. This restricted access, Plaintiffs argue, reinforces the urgency of the requested inspection. ECF No. 15-1 at 4.

In response, Defendants do not dispute the incidents of fire or the close proximity of the tents. ECF No. 20 at 5. Rather, they contend Safe Sleeping prohibits the use of candles or engaging in activities that could pose a fire hazard, and as the fires were controlled and did not spread to other living spaces, they are "not evidence that participating in Safe Sleeping poses a bigger risk of injury from an uncontrolled fire than living anywhere else in San Diego, including in or near a homeless encampment." *Id.* Defendants also cite the

25-cv-2186-AGS-MMP

condition prohibiting participants from inviting any visitors or guests onto the camp sites as the reason counsel was not permitted entry. *Id.* at 2–3.

Plaintiffs have established good cause to conduct an early inspection of the O lot only. Though Plaintiffs seek generally to develop evidence to determine whether to seek a preliminary injunction, Plaintiffs' rationale supporting the expedited nature of the requested site inspection is risk of fire danger. As no evidence before the Court addresses the B lot, Plaintiffs have established the need for immediate site inspection as to the O lot only. Thus, on this record, both factors of the purpose for expedited discovery, as well as whether to seek an early injunction, support permitting an expedited inspection of the O lot only. *See Dunsmore*, 2023 WL 215724, at *2 (recognizing expedited discovery should be "narrowly tailored to obtain information relevant" to determining whether to seek an injunction) (citation omitted).

### B.    The Breadth of The Site Inspection and Burden on Defendants to Comply

Plaintiffs represent the site inspection will be conducted by their counsel and two experts and may include inspecting, measuring, surveying, photographing, testing, or sampling the property. ECF No. 23 at 5–6; ECF No. 15-2. Though Plaintiffs initially did not provide a duration, they estimate in their reply brief that inspection of the O lot will take four hours. ECF No. 23 at 5.

Defendants oppose the site inspections based on lack of sufficient notice, the length and scope of the inspection, and concerns regarding the participants' privacy. *See* ECF No. 20 at 1, 3–4. The Court finds these arguments are relevant to the factors of "the breadth of the discovery requests" and "the burden on the defendants to comply with the requests[.]" *See Am. LegalNet*, 673 F. Supp. 2d at 1067 (citation omitted).

First, the Court rejects Defendants' contention Plaintiffs failed to provide "statutory notice." ECF No. 20 at 1. Defendants argue they received "shortened" notice based on the dates included in the proposed inspection notice. *Id.* at 4. However, because the inspection date was merely proposed and never formally noticed by Plaintiffs or authorized by the Court, Defendants' objection based on "shortened notice" lacks merit.

25-cv-2186-AGS-MMP

Defendants next assert the proposed inspection scope is overly broad and, without elaboration, suggest a one-hour limitation. ECF No. 20 at 4. Defendants contend to ensure participants' access to common areas and bathrooms, the participants are entitled to "sufficient, advanced notice of the date, time, and terms of the inspection" as well as "a reasonable opportunity to temporarily vacate the premises during the inspection." ECF No. 20 at 3.

The Court agrees and therefore imposes conditions tailored to accommodate both Plaintiffs' inspection needs and the participants' ability to access common areas and bathrooms. The parties shall submit a joint protocol outlining the time, date, and scope of the inspection. To that end, Defendants must provide Plaintiffs' counsel with a map or layout plan of the O lot within ten (10) days of this Order. To minimize any disruption, the parties shall schedule the inspection to avoid periods of peak facility use. The Court will also require the parties to provide public notice of the inspection within the O lot at least fourteen (14) days in advance, including separate notice in the common areas, bathrooms, and the entrance to the O lot. The notice must specifically state if and when a common area or bathroom is expected to be temporarily inaccessible during the inspection.

Finally, Defendants raise substantial privacy concerns, asserting "participants in Safe Sleeping should not be treated like their lives are on display for any reason." ECF No. 20 at 3. As Defendants highlight, all participants in the Safe Sleeping Program agree to prohibit visitors, so permitting counsel and experts to inspect the camps exceeds the participants' customary expectations. Notably, none of the privacy concerns relate to the timing of the inspection. Further, given the nature of the Safe Sleeping Program—participants reside at the campsites temporarily while they look for long-term housing—specific protective measures are appropriate regardless of when the inspection occurs. Indeed, Plaintiffs have already agreed to "make the utmost effort to ensure that the privacy rights of individuals living at either camp location are protected" including "avoid[ing] taking any photographs that show any resident without the resident's express permission" and "delet[ing] all photographs where residents or identifying information were

25-cv-2186-AGS-MMP

accidentally captured." ECF No. 15-2 at 6; ECF No. 23 at 5. The Court extends this prohibition to video and audio recordings as well. In addition, to minimize any disruption to other participants, Plaintiffs shall not conduct interviews with program participants during the inspection. However, Defendants' counsel will facilitate the provision of information to Plaintiffs' counsel and experts, as reasonably necessary, during the inspection.

Counsel shall meet and confer to have a protective order entered prior to the inspection. In addition, counsel shall negotiate an inspection protocol that includes specific parameters for the inspection (date, time, duration, and scope) and concrete privacy safeguards. Counsel for the parties are best positioned to craft procedures that facilitate Plaintiffs' access while minimizing the burden on Defendants and respecting the participants' needs and the program's operation.

### C.    How Far in Advance of The Typical Discovery Process the Request was Made

Finally, the Court considers the factor of "how far in advance of the typical discovery process the request was made." *Am. LegalNet*, 673 F. Supp. 2d at 1067. Plaintiffs filed this action in August 2025. Defendants filed a motion to dismiss, which the Court recently denied in substantial part and granted Plaintiffs leave to amend their complaint. ECF No. 36. While the pleadings may not be fully set yet, some claims survived the motion, and Plaintiffs' allegations of unsafe and dangerous conditions—particularly the documented risk of fire at the O lot—present significant concerns underscoring the need for early inspection. *See Semitool*, 208 F.R.D. at 276 ("The issue is whether there is good cause to provide immediate access to the requested discovery rather than postponing its ultimate production during the normal course of discovery."); *c.f. Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1076 (S.D. Cal. 2019) (finding "no evidence that the data is otherwise at risk of spoliation" weighed against expedited discovery).

The Court has also carefully considered Defendants' opposition. On this record, Defendants do not dispute the relevance of the discovery sought and have articulated no

25-cv-2186-AGS-MMP

specific prejudice or burden resulting from the timing of the inspection. Consequently, "the Court is unable to discern any real prejudice to Defendants in advancing discovery by a modest amount of time." *Semitool*, 208 F.R.D. at 277. While the inspection will require logistical coordination, the minimal burden and expense to Defendants is substantially outweighed by the potential value of early fact development of the O lot's conditions. Moreover, there is no other way for Plaintiffs to obtain the evidence, which is exclusively with Defendants' control. *See, e.g.*, *Alvarez v. LaRose*, No. 20-cv-782-DMS-AHG, 2020 WL 5594908, at *6 (S.D. Cal. Sept. 18, 2020) (recognizing "firsthand observation of conditions" of a facility through a site inspection "is likely to yield information that could not be readily obtained through secondhand accounts") (quoting *Chunn v. Edge*, No. 20-cv-1590-RPK, 2020 WL 1872523 (E.D.N.Y. Apr. 15, 2020)).

In sum, the Court finds Plaintiffs have established good cause for early inspection of the O lot rather than postponing the inspection to the normal course of discovery. *See Semitool*, 208 F.R.D. at 276.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, the Court **GRANTS IN PART** Plaintiffs' motion for an early inspection of the O lot and **ORDERS** as follows:

1.    No later than **<u>June 8, 2026</u>**, Defendants shall provide Plaintiffs' counsel with:

    a.    A map or layout plan of the O lot; and

    b.    Proposed dates for a site inspection of the O lot at least 30 days and no more than 60 days from the date of this Order.

2.    Counsel shall meet and confer by videoconference or in person to establish the precise date, time, scope, and duration of the inspection. To address Defendants' concerns about uninterrupted access to common facilities and restrooms, counsel shall consider whether the inspection should be conducted in a single session (not to exceed two hours) or scheduled over two shorter sessions (up to one hour each).

3.    The parties shall set the inspection of the O lot to occur at a mutually convenient time based on the dates provided by Defendants.

4.      The parties shall provide written notice to O lot participants at least fourteen (14) days before the inspection. Such notice must include the inspection's date, time, and scope and must be posted in common areas, bathrooms, and the entrance to the O lot. The notice must specifically identify if and when a common area or bathroom will be temporarily inaccessible during the inspection.

5.      Plaintiffs shall not take photographs, video, or audio recordings depicting any Safe Sleeping participant without that person's express permission. Any accidental capture of an unpermitted person must be immediately deleted.

6.      Plaintiffs shall not conduct interviews with Safe Sleeping participants during the inspection. Defendants' counsel shall cooperate in providing relevant factual information to Plaintiffs' counsel and experts as reasonably necessary during the inspection.

**IT IS SO ORDERED**.

Dated:  May 29, 2026

HON. MICHELLE M. PETTIT
United States Magistrate Judge

25-cv-2186-AGS-MMP