UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jeffrey BRADLEY, et al.,<br>Plaintiffs,<br>v.<br>CITY OF SAN DIEGO, et al.,<br>Defendants. | Case No.: 25-cv-2186-AGS-MMP<br>**ORDER DENYING MOTION FOR RECONSIDERATION (ECF 39)** |

Plaintiffs are residents of the City of San Diego's "Safe Sleeping" program, suing the City for myriad alleged violations. At a May 7, 2026 hearing, the Court denied defendants' motion to dismiss the first amended complaint. (*See* ECF 36.) Defendants seek reconsideration of that ruling. (*See* ECF 39, 40, 41.)

## DISCUSSION

A motion to reconsider is appropriate only when a court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. IJ v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). To that end, a "party seeking reconsideration must show more than a disagreement with the Court's decision." *United States v. Westlands Water Dist*., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001).

Because defendants do not present newly discovered evidence nor provide an intervening change in controlling law, they are presumably moving under clear error. *School Dist. No. IJ*, 5 F.3d at 1263. "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must be dead wrong." *United States v. Hollis*, 506 F.3d 415, 421 (5th Cir. 2007).

The defense broadly argues that "the Court . . . collapsed federal and state statutory frameworks without reconciling their governing legal principles." (ECF 39-1, at 9.)

Defendants' challenges can be broken into three categories: (1) housing claims, (2) disability-discrimination claims, and (3) the state-created danger claim. (*Id.* at 9–10.)

**A. Housing Claims**

Regarding the housing claims, defendants primarily take issue with the Court's pleading-stage ruling that Safe Sleeping could be subject to regulation under the Fair Housing Act. (*See* ECF 37, at 18 ("I am going to . . . find that they qualify as a dwelling, as some sort of building or structure. But I think it's a close call, and I think perhaps further discovery on the issue may help clarify the issue at summary judgment.").) But they concede that this is "an issue of first impression," and "no published federal appellate decision has answered [the] question." (ECF 39-1, at 15; *cf.* ECF 37, at 13 (The Court: "The Ninth Circuit has not definitively defined 'residence.'").)) This concession effectively ends the Court's inquiry on this topic: "a question of first impression not yet addressed by any circuit court in a published opinion cannot satisfy . . . clear error." *In re Swift Transportation Co.*, 830 F.3d 913, 916–17 (9th Cir. 2016) (cleaned up). If "no prior Ninth Circuit authority prohibited the course taken by the district court, its ruling is not clearly erroneous." *Id.* (citations omitted). So, defendants' arguments regarding the FHA- and FEHA-related rulings are non-starters.

**B. Disability Claims**

Defendants next "request[] reconsideration because the Order does not address how Safe Sleeping can simultaneously be characterized as residential housing under the FHA while remaining a public accommodation under Title III" of the Americans with Disabilities Act (ADA). (ECF 39-1, at 19.) But one of the defense's own cited authorities reinforces this Court's ruling that the FHA and ADA could both plausibly apply: *Independent Housing Services of San Francisco v. Fillmore Center Associates*, 840 F. Supp. 1328 (N.D. Cal. 1993). (*See* ECF 39-1, at 23.) In *Independent Housing*, the court held that the "residential portions" of a mixed-use facility did "not themselves fall within the bounds of the ADA," but that the "the ADA applies" to the "public . . . programs and activities" at that center. 840 F. Supp. at 1344. So too here. This Court found that,

because "[t]he ADA defines 'public accommodation' to include a . . . homeless shelter," the act could reasonably apply to portions of Safe Sleeping. (ECF 37, at 18–20.) For example, the "bathroom and shower facilities and communal areas set up for meals" are accessible by all members of the Safe Sleeping community, and thus may reasonably be a public accommodation. (ECF 12, at 39–40.) This is not the stuff of clear error.

Similarly, the defense recycles its argument that plaintiffs did not sufficiently allege that their "reasonable accommodations claims" were denied under Title II of the ADA. (*See* ECF 39-1, at 26.) In its ruling, this Court rejected that argument, reasoning that we were merely at the pleading stage and this issue was "a fact-intensive inquiry." (ECF 37, at 18.) Defendants have offered no authority that a reasonable-accommodation request is not a fact-intensive inquiry. Instead, they provide a string of out-of-circuit authority for the proposition that a "reasonable-modification claim requires allegations showing the public entity was aware of the plaintiff's disability-related need and failed to provide a reasonable accommodation or modification." (ECF 39-1, at 26.) As the Court has previously noted, however, plaintiffs allege exactly that. (ECF 37, at 18; *see, e.g.*, ECF 12, at 6 (alleging plaintiff Allen was "temporarily exited from the program . . . following a dispute with Defendant Dreams for Change regarding a request for reasonable accommodation for his emotional support animal"); *id*. at 8 (alleging plaintiff Borja was "prevented from using his [prescribed] CPAP machine at the Camp and has been denied an appropriate diet for his diabetes"); *id*. at 25 (alleging plaintiff Zaleta "was reliant on the only available accessible shower" but "[t]he only accessible shower at B lot was out of service for two months, despite repeated complaints").)

Defendants propound merits arguments about each accommodation request, but by their own briefing, the requirement is merely that defendants were "aware" of the "need"—not that each plaintiff followed a specific administrative process. Indeed, the Ninth Circuit "adopted" the "deliberate indifference standard" for "Title II of the ADA." *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). "When the plaintiff has alerted the public entity to his need for

accommodation (*or where the need for accommodation is obvious, or required by statute or regulation*), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id*. (emphasis added); (*see, e.g.*, ECF 12, at 24–25 ("Plaintiff Timothy Allen submitted a request for reasonable accommodation to the Dreams for Change staff on or about May 8, 2025."); ("Plaintiff Liam Burton submitted a request for reasonable accommodation to the Dreams for Change staff on or about June 26th, 2025.").) As the Ninth Circuit does not require a specific method of accommodation request, defendants' briefing does not show any error—let alone clear error—on the Title II claim.

**C. State-Created Danger Claim**

Finally, as to the state-created danger cause of action, defendants' chief argument is that the Court clearly erred by finding the present case analogous to *Hunters Capital LLC v. City of Seattle*, 499 F. Supp. 3d 888 (W.D. Wash. 2020) (*Hunters Capital I*). (ECF 39-1, at 28.) In *Hunters Capital I*, as this Court noted, the trial court denied a motion to dismiss a similar claim because the *Hunters Capital* plaintiffs alleged that, as part of an intentional strategy, "the [c]ity stopped responding to 9-1-1 calls in a portion of the city." (ECF 37, at 54); *see also Hunters Capital I*, 499 F. Supp. 3d at 902–03. Similarly, in our case, the government was purportedly "notified of dangerous conditions, such as rat infestations, and [] stopped responding" (ECF 37, at 54), which plaintiffs allege was an "affirmative[]" "act" that makes Safe Sleeping "more dangerous" than "allow[ing]" plaintiffs "to erect tents on their own" (ECF 12, at 33). The throughline is the City's alleged knowledge and affirmative actions, which the Court found sufficient for "Claim 2 [to] survive[] the motion to dismiss." (ECF 37, at 54.)

Defendants argue that this is clear error because—*at the summary-judgment stage*—the *Hunters Capital* court ruled that plaintiffs had not proven a state-created danger. *See Hunters Capital, LLC v. City of Seattle* (*Hunters Capital II*), 650 F. Supp. 3d 1187, 1200 (W.D. Wash. 2023). This argument is inapposite. This Court was relying on the *Hunters Capital* analysis at the motion-to-dismiss stage, when the question is merely whether

plaintiffs have stated a plausible claim, not the summary-judgment stage, when the Court's focus turns to whether the claim has been proven. *Compare Hunters Capital I*, 499 F. Supp. 3d at 902 ("The Court concludes that these allegations are sufficient to state a substantive due process claim under the state-created danger exception.") *with Hunters Capital II*, 650 F. Supp. 3d at 1200 (ruling that "Plaintiffs fail[ed] to make [the] showing" required to "prevail" under "the state-created danger exception"). *Hunters Capital II* does not stand for the proposition that a government's systemic failure to respond to dangerous conditions *can never* support a state-created danger claim. The *Hunters Capital* court merely found that the plaintiffs *had not* proven such facts in that case. Indeed, this Court emphasized that exact possibility in its initial ruling. (*See* ECF 54–55 ("I think the defense raised some . . . good points on a number of the issues . . . but I think they're better dealt with at the summary judgment stage.").)[1]

## CONCLUSION

Motions for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to" the Court's ruling. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008). Defendants' reconsideration motion violates this principle—attempting to relitigate issues this Court has already considered, including matters of first impression. Defendants' motion is **DENIED**. At the October 7, 2026 hearing, the Court will still hear argument on the motions to strike and to dismiss.

Dated: October 6, 2026

Hon. Andrew G. Schopler
United States District Judge

---

[1] Defendants also dispute some of plaintiffs' prior arguments, which, as defendants indirectly concede, the Court did not rely on in its ruling. (ECF 39-1, at 28 ("Plaintiffs also relied on *Hernandez v. City of San Jose*, 897 F.3d 11125 (9th Cir. 2018).").) Reconsideration is not the appropriate vehicle for rehashing disagreement with opposing parties on issues that do not affect the Court's prior order.